# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN M. YOUNG,<br>          **Plaintiff,**<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>          **Defendant.** | 1:14-cv-00202-TFM |

## MEMORANDUM OPINION AND ORDER

April 16, 2015

## I. Introduction

Steven M. Young ("Plaintiff" or "Young") brought this action for judicial review of the decision of the Commissioner of Social Security ("Commissioner"), which denied his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383(f). The parties have filed cross-motions for summary judgment (ECF Nos. 8 and 10), which have been fully briefed (ECF Nos. 9, 11 and 12) and are ripe for disposition. For the following reasons, Plaintiff's motion will be **GRANTED IN PART**, the Commissioner's motion will be **DENIED**, and the case will be **REMANDED** for further consideration.

## II. Background

Administrative Law Judge David F. Brash ("ALJ") found that Plaintiff has a large number of severe physical impairments. However, because Plaintiff's appeal solely focuses on the ALJ's evaluation of his mental impairments, this Memorandum Opinion will address only Young's mental impairments.

1

Plaintiff was born on December 28, 1965.[1] He is a high school graduate. He has past relevant work experience as a phone operator and machine operator, which the ALJ found that he was unable to perform. Young also was a professional musician. Young has not engaged in substantial gainful activity since the applicable protective filing date of April 6, 2011.

A. **Procedural History**

Plaintiff had filed prior applications for benefits which were denied and became final. Thus, the applicable time period for this matter commences on April 6, 2011. After Plaintiff's claims were denied at the administrative level on May 18, 2011, he requested a hearing, which was held on March 27, 2013 (almost two years later) in Erie, Pennsylvania. At the hearing, Plaintiff was represented by counsel and testified, as did an impartial vocational expert ("VE").

On April 16, 2013, the ALJ rendered a decision unfavorable to Plaintiff, finding that he was not disabled through the date of the ALJ's decision. R. 16-30. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On August 5, 2014, Plaintiff filed a Complaint in this Court, in which he seeks judicial review of the decision of the ALJ. The parties' cross-motions for summary judgment then followed.

B. **Medical Evidence**

Young claims that he is unable to work due to depression. Young first began to receive mental health treatment in 2008-2009 at Stairways Behavioral Health ("Stairways"). R. 290. He continued to receive behavioral health blended case management services at Stairways, at least

---

1. As of his alleged onset date, Plaintiff was classified as a "younger person" under the regulations. 20 C.F.R. § 404.1563(c) ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work.").

2

through March 25, 2013. Pursuant to a letter from Stairways Blended Case Manager Jennifer Stellmach, to be eligible for such services Young must have "a persistent, Severe Mental Illness, a mental health treatment history, and difficulty functioning appropriately in the community." R. 508. Ms. Stellmach's letter notes that Young is unable to engage in Education/Vocation due to his medical condition. *Id*.

In his oral testimony at the hearing, Young explained that his depression causes problems with motivation and concentration. In a week's time, he is active enough on only two days to get through his daily activities. On the remaining five days, he keeps to himself in his room and does not want to be around people. R. 51. He has very low energy and suffers poor sleep patterns. R. 53. Young believed that he would not be able to maintain regular attendance at a job. Young testified that he had been unable to keep his sponsored employment as a part-time custodian at Stairways. R. 45. At the hearing, the VE testified that if a person was assumed to be off-task more than 15% of a work-day or absent more than two or three days per month then there would be no jobs available in the national economy. R. 66.

From April 12, 2010 through January 17, 2013, Young was treated at Erie Psychiatric Associates. His treating physician was psychiatrist Matthew Dejohn, D.O., and his therapist was Jen Girtz. To be sure, many of the items on the treatment form checklists reflect that Young was often within normal limits for appearance, behavior, thought-process, orientation, etc. Nevertheless, the record reflects a continuous depressed mood and a diagnosis of major depressive disorder, severe, recurrent. R. 293. Dr. Dejohn made continuous efforts to find an effective treatment, but without success. He initially prescribed Celexa and Ambien.[2] In July 2010, Dr. Dejohn added Depakote. In September 2010, Dr. Dejohn increased the dosage of Celexa, with initially positive results which did not last. *See* R. 282 (Young felt the "fog lift")

---

[2] Dr. Dejohn's handwritten treatment notes are very difficult to decipher.

3

and R. 281 (Young reported return of depression and sleep problems). In December 2010, Dr. Dejohn reduced the dosage of Celexa and added Zoloft. R. 275. In March 2011, Dr. Dejohn increased the dosage of Zoloft. R. 267. In July 2011, Dr. Dejohn again increased the dosage of Zoloft. R. 448. In September 2011, Dr. Dejohn added a prescription for Lamictal. R. 446. In October 2011, Dr. Dejohn added a prescription for Amitriptyline. R. 445. In December 2011, Dr. Dejohn prescribed Vivactal. R. 444. On March 1, 2012, Dr. Dejohn added a prescription for Doxepin. R. 440. On March 21, 2012, Dr. Dejohn prescribed Ritalin. R. 439. In July 2012, Dr. Dejohn prescribed Cymbalta. R. 434.

Notably, Dr. Dejohn stated in his July 31, 2012 treatment note that Young was "agreeable to ECT referral." R. 434. ECT refers to Electroconvulsive Therapy, which the ALJ recognized as an "aggressive treatment recommendation." Dr. Dejohn stated again in September 2012 that a referral ECT would be investigated. R. 433. Ultimately, Young did not receive ECT therapy because Millcreek Community Hospital in Erie no longer performed the procedure and Western Psychiatric Hospital in Pittsburgh did not accept Young's insurance. R. 50.

In September 2012, Dr. Dejohn increased the dosage of Cymbalta. R. 433. In December 2012, Dr. Dejohn prescribed Viibryd and added a prescription for Ativan. R. 429-430. At his last appointment with Young in January 2013, Dr. Dejohn noted that Young remained depressed.

Due to his medical insurance coverage, Young transferred his mental health treatment to Safe Harbor Behavioral Health and underwent an intake assessment and examination on February 11-12, 2013. Antonio Simora, D.O., noted that Young was alert, oriented, cooperative and had no focus, concentration or attention issues. Nevertheless, Dr. Simora opined that Young continued to be depressed, and continued his prescriptions for Viibryd and Ativan and added a prescription for Wellbutrin. R. 456. Young's diagnosis was Major Depressive Disorder,

4

Recurrent Episode, Mode, with borderline traits. Dr. Simora assigned a GAF score of 50. R. 457.

On May 11, 2011, Emanuel Schnepp, Ph.D., a state agency psychologist, performed a records review. Dr. Schnepp opined that Young's ability to complete a normal workday and work-week was only moderately limited and that Young would be able to maintain regular attendance and be punctual within reasonable expectations. R. 95. Dr. Schnepp also opined that Young had only moderate limitations in his ability to follow simple job instructions and perform routine work without special supervision. Obviously, Dr. Schnepp's review covered only the medical records available as of May 2011. No review was performed regarding the extensive additional medical treatment of Young's depression from May 2011 through March 2013.

The ALJ found that Young's Major Depressive Disorder was a severe impairment, but did not rise to a listed impairment. The ALJ concluded that the intensity, persistence and limiting effects of Young's impairments were not supported by the objective psychiatric findings and were not indicative of debilitating symptoms. In reaching this conclusion, the ALJ explained that on June 13, 2012, Young had been assessed by Dr. Dejohn with a GAF score of 60, "which generally indicates no more than moderate (nearly mild) symptoms." R. 22. Unfortunately, as all parties concede, the ALJ was wrong -- he misinterpreted a reference to a medication refill as a GAF score. *See* Defendant's Brief at 15 n.5. The only GAF score assigned to Young was 50, which is indicative of "serious symptoms OR any serious impairment in social, occupational, or school functioning." However, the ALJ rejected this lower GAF score as based primarily on Young's subjective complaints and not fully credible in light of the other evidence that his impairments were mild and would not interfere with his ability to work. R. 24.

The ALJ also gave "great weight" to Dr. Schnepp's 2011 record review in reaching his decision. R. 28. By contrast, the ALJ acknowledged that Dr. Dejohn had referred Young for ECT therapy, but discounted that fact on the ground that the lack of documented pursuit of a provider who would accept Young's insurance "suggests that such treatment may not have been deemed essential." R. 23. The ALJ further characterized Dr. Dejohn's examinations of Young as "essentially unremarkable." *Id*. The ALJ did not address the diagnosis of Dr. Simora. The ALJ did not explain in detail why he credited a 2011 opinion from a non-examining state agency physician over the medical records from the treating physicians over the ensuing two years.

Finally, the ALJ accepted the VE's testimony that there was available work for someone with Young's functional limitations. However, the ALJ did not address or explain the VE's additional testimony that no work was available in the national economy for a person who would be off-task more than 15% of the time or absent more than 2-3 days per month.

## III. Legal Analysis

### A. Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461.

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the

Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

### B. Discussion

Plaintiff contends that the ALJ erred in the assessment of his depression in several respects: (1) by giving "great weight" to the opinion of the 2011 state agency record-reviewer rather than the subsequent opinions of Young's treating physicians; (2) by mis-interpreting or selectively quoting from the records of the treating physicians; (3) by wrongly relying on a GAF score of 60, which is <u>not</u> in the record and rejecting the GAF score of 50 that <u>is</u> in the record; and (4) by failing to consider whether Young could meet the absenteeism requirements of continuous, regular employment.

Defendant concedes that the ALJ erred by finding that Young had a GAF score of 60. Nevertheless, Defendant contends that there is substantial evidence in the record to support the ALJ's decision that Young is not disabled. In particular, Defendant contends that the ALJ's

mental residual functional capacity assessment and hypothetical to the VE were sufficient to address Young's credibly established limitations. Defendant further points out that Plaintiff failed to submit any opinions from Dr. Dejohn or Ms. Girts regarding Young's inability to work due to his depression. Defendant notes that Case Manager Stellmach's opinion is not entitled to deference as she is not an acceptable medical source.

Upon review of the record and consideration of the arguments of the parties, the Court concludes that this matter must be REMANDED for further consideration.

As an initial matter, the ALJ made a clear (and conceded) factual error. The ALJ wrongly found that Dr. Dejohn had assessed a GAF score of 60, which is indicative of only mild restrictions in ability to function. Clearly, Young was never given a GAF score of 60 by Dr. Dejohn. This error had a significant, wide-ranging effect on the ALJ's conclusion. It led him to discount the fact that Dr. Dejohn had endorsed the aggressive ECT therapy for Young. Indeed, the ALJ speculated that such aggressive treatment may not have been necessary. It also led the ALJ to reject Young's actual GAF score of 50, which was assessed by Dr. Simora. More generally, the non-existent GAF score of 60 supported the ALJ's conclusion that Young could engage in consistent work. Based on this error alone, remand would be necessary.

In addition, the Court finds that the ALJ failed to sufficiently or properly explain why he gave "great weight" to the opinion of an agency record-reviewer – in 2011 – and discounted the records of Young's actual treating physicians, which extended through 2013. As explained in *Natale v. Comm'r of Soc. Sec.*, 651 F. Supp. 2d 434, 448 (W.D. Pa. 2009):

> "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' " *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *see also Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989); *Podedworny v. Harris*, 745

F.2d 210, 217–18 (3d Cir. 1984). Therefore, a treating physician's opinion is accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] record." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

In this case, the medical records reflect that Dr. Dejohn systematically treated Young for depression which persisted for several years. Numerous medication and dosage adjustments were implemented, without long-term success. Dr. Simora's diagnosis of Major Depressive Disorder, recurrent, was consistent with that of Dr. Dejohn. Dr. Schnepp neither observed nor treated Young. More importantly, Dr. Schnepp had no opportunity to review the records of the continued, extensive medical treatment of Young's condition which occurred during 2011-2013. Given these structural shortcomings to Dr. Schnepp's analysis, it was incumbent upon the ALJ to provide a clear and cogent explanation for giving "great weight" to his opinion. The ALJ failed to do so.

A further error must also be addressed on remand. The ALJ framed his hypothetical to the VE in terms of daily work activities, such as the ability to understand instructions, perform simple tasks, interact with co-workers and take feedback from a supervisor. The limitations recognized by the ALJ were similarly framed, such as having no transactional interactions (sales/negotiations), a low stress environment, no production rate pace, and only occasional changes in work setting. Such a hypothetical does not address the real underlying functional limitation posed by Young's depression. It is not the details of a particular job that are at issue – rather, it is Young's general inability to get out of the house and engage in regular, consistent attendance at <u>any</u> job. As the VE opined, no employer will tolerate more than 2-3 days of absenteeism per month. Young testified that he experienced five (5) days per <u>week</u> of an

inability to leave home and that he had been unable to maintain even sponsored, part-time employment as a custodian at Stairways. As explained in *Natale*, 651 F. Supp. 2d at 456:

> The ability to engage in substantial gainful employment means more than the ability to do certain of the physical and mental acts required on the job; the claimant must be able to sustain the physical and mental demands of work-related activities throughout continuous attendance in a regular work week. *Dobrowolsky v. Califano*, 606 F.2d 403, 408 (3d Cir. 1979). The question thus is not whether a claimant can perform activities consistent with substantial gainful activity on any particular day, but whether the claimant has the ability to engage in work activities on a systematic and sustained basis.

The ALJ failed to make specific factual findings about Young's ability to attend work consistently and failed to build any such limitation into his hypothetical to the VE.

## IV. Conclusion

It is apparent that the ALJ failed to provide sufficient support for his conclusion that Young is not disabled within the meaning of the Social Security Act. However, the record is not sufficient to demonstrate that Young is, in fact, disabled. Accordingly, the matter must be remanded for further consideration in accordance with this Memorandum Opinion.

In accordance with the foregoing, the Court will **GRANT IN PART** the Motion for Summary Judgment filed by Plaintiff and **DENY** the Motion for Summary Judgment filed by the Commissioner. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Steven M. Young,<br>    **Plaintiff,**<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>    **Defendant.** | )<br>)<br>)<br>) 1:14-cv-202<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

**AND NOW**, this 16th day of April, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff's MOTION FOR SUMMARY JUDGMENT (ECF No. 8) is **GRANTED IN PART**, the Commissioner's MOTION FOR SUMMARY JUDGMENT (ECF No. 10) is **DENIED**, and the case is hereby **REMANDED** for further consideration.

                BY THE COURT:

                s/ Terrence F. McVerry
                United States District Judge

cc: **Gerald Michael Sullivan**
   Email: heysullivan@windstream.net

   **Marshall J. Piccinini**
   Email: marshall.piccinini@usdoj.gov